# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 805 | **DATE** | 11/8/2002 |
| **CASE TITLE** | Julie Keating vs. Fields BMW of Northfield, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment [12-1] is denied. This case will proceed to trial on 12/2/02 at 10:00 a.m. All other set dates will stand. The parties are directed to meet before the final pretrial conference in a sincere effort to resolve this matter short of trial. Additionally, the court's docket reflects that the defendant's counsel, Scott Hoyne, has not filed an appearance in this case and is directed to do so before the final pretrial conference. Counsel for both parties shall ensure that they comply with the federal bar requirements as set out in L.R. 83.11.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 28 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/8/2002 date mailed notice | |
| MD | courtroom deputy's initials | 02 NOV 12 PM 3:03 01 03-0371 Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JULIE KEATING, | ) |
| Plaintiff, | ) |
| vs. | ) No. 01 C 0805 |
| | ) Judge Joan H. Lefkow |
| FIELDS BMW OF NORTHFIELD, INC. a/k/a | ) |
| FIELDS IMPORTS, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Julie Keating ("Keating"), alleges that she was subjected to sexual harassment while working for defendant Fields BMW of Northfield, Inc. a/k/a Fields Imports, Inc. ("Fields"), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.*[1] Before the court is Fields' motion for summary judgment. The court has jurisdiction over the claim pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e5-(f)(3). For the reasons set forth below, the court denies the motion.

DOCKETED

NOV 1 3 2002

---

[1] Throughout her complaint, Keating alleges that the acts of harassment constituted discrimination against her because of her sex (female). (Compl. ¶¶ 16-19). Contrary to Fields' position at Part D of its Memorandum in Support of Defendant's Motion For Summary Judgment which construes the complaint as also alleging a claim of disparate treatment compared to male employees, Keating confirms (in her Response at 7) that her claim is solely for discrimination based on sexual harassment. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986) (claim of hostile environment sexual harassment is a form of sex discrimination actionable under Title VII).

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

# FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF[2]

Fields is a BMW dealership that sells new and used cars. Fields employed Keating as a salesperson from September 11, 1995 until March 23, 2000, when it terminated her. Steven McDonald ("McDonald") was the sales manager at Fields and one of Keating's supervisors. McDonald testified that Keating was one of his top salespeople and that Keating also regularly received recognition and awards for her car sales and customer satisfaction. (McDonald Dep. at 178, 181-84.)

## A. Keating's allegations of McDonald's misconduct

Beginning about October 1999 and continuing to March 2000, McDonald made sexually suggestive comments to Keating on approximately a weekly basis. (Keating Dep. at 61.) Moreover, Keating testified to specific instances where she believed McDonald sexually harassed her:

- On November 29, 1999, Keating went into McDonald's office to get a "deal bag" (i.e., a bag that contains customer order materials) for one of her customers. To get the deal bag, Keating had to reach under McDonald's desk while he sat there. McDonald pointed to his "crotch" and said, "While you are down there, help me out." (Keating Dep. at 89-91.) He also touched her head and pushed her towards his crotch. Keating then said to him, "I can't believe you." (*Id.*)

- On December 20, 1999, McDonald told Keating that if he got a car for a customer of hers "she would have to do something really good for him and she had better go back to her desk and think about what she could give him." (Pl. L.R. 56.1 ¶¶ 39-40.) Keating testified that McDonald made similar comments such as this one on many occasions. (*Id.*)

---

[2] As with every summary judgment motion, the court accepts Keating's version of any disputed fact where it is arguably supported by the record. *Pluta v. Ford Motor Co.*, 110 F. Supp. 2d 742, 744 (N.D. Ill. 2000). Further, on numerous occasions, *e.g.*, Def. Resp. to Pl. L.R. 56.1 ¶¶ 23-25; 34-39, Fields does not support its denials of Keating's fact statements with citations to the record and, therefore, where Keating's facts are supported by the record, the court deems these facts admitted. *See Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527-28 (7th Cir. 2000) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment."); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D.Ill. 2000) ("Factual allegations not properly supported by citation to the record are nullities.").

- On March 5, 2000, a female customer approached Keating about purchasing a Model 323 Convertible BMW. The car was a new design and difficult to obtain. Keating went to McDonald to see if he could help her obtain the car for the customer as soon as possible. Right after the customer left, McDonald said to Keating, "I'll get the car sooner for [the customer] if you sleep with her and I can watch." (Keating Dep. at 68-69.) Shortly after McDonald made this comment, he then proposed to Keating that she "just sleep with him." (*Id.* at 73.) In response, Keating told McDonald that his comments were "uncalled for." (*Id.* at 74.)

Moreover, Keating testified to occasions where she did not interpret McDonald's conduct to be sexually harassing towards *her* but she found his conduct to be in "poor taste" or "strange" (Keating Dep. at 77, 79):

- On December 8, 1999, McDonald told Keating that he knew for a fact that a Fields female salesperson had slept with the male sales manager at Perillo BMW, another automobile dealership. (Pl. L.R. 56.1 ¶ 31.)

- Keating testified that on many occasions, McDonald would see a woman and he would say, "She wants me, she's in love with me." (*Id.* ¶ 32.)

- In February 2000, Keating walked into McDonald's office while he was on the phone with a woman who was a friend of his and a colleague's wife. After the phone conversation was over, McDonald told Keating that the woman wanted to have an affair with him. He also said to Keating that because Keating would not have an affair with him, he would have to have an affair with this woman. (*Id.* ¶ 26.) On two other occasions, McDonald commented about this woman "really wanting him and wanting to have an affair with him." (*Id.* ¶ 29.)

- On February 7, 2000, while in McDonald's office, McDonald told Keating to "do me a favor, if you ever sue me [for sexual harassment], do it big." (*Id.* ¶ 42; Keating Dep. at 77-79.)

Fields has a "No Harassment Policy," which states Fields will not tolerate any form of harassment such as sexual harassment including, but not limited to, unwanted sexual advances; offering employment benefits in exchange for sexual favors; visual conduct; verbal sexual advances, propositions or requests; verbal abuse of a sexual nature; and physical conduct. (Def. Ex. H.) The Policy further provides that:

4

> If you feel that you are being harassed by another employee, you should immediately notify your supervisor. If you do not feel that the matter can be discussed with your supervisor, you should contact Barbara Becker at Jeep and arrange for a meeting to discuss your complaint.

(*Id.*) Keating signed a form where she acknowledged that she received a copy of Fields "No Harassment Policy." (*Id.*) Keating, however, did not make use of the Policy's complaint system while she worked at Fields.

**B.    Keating's termination**

In early March 2000, Nancy Chafin ("Chafin"), Fields' general manager, completed an audit of the cars that the salespeople marked as sold. Chafin's audit revealed that Keating was violating a company policy by marking cars as sold without obtaining signed orders and deposits from the customers. (Def. L.R. ¶¶ 25-26.)[3] Chafin spoke with John Fields, the owner of Fields and after their conversation, Chafin shared the information with McDonald, who on March 23, during a phone conversation with Keating (overheard by Chafin) fired Keating. (Chafin dep. at 61-67).[4] McDonald stated that, although other violators were not disciplined, he fired Keating because of the "sheer number of cars" (over 22 cars) for which Keating did not have signed orders and deposits and because she had stated on the form that money had been put down when it had not. (Def. L.R. 56.1 ¶¶ 24-25)[5]

---

[3] The purpose of this company policy was to ensure the customer truly intended to purchase the car and to assure fairness to all salespeople so one salesperson could not "hoard" incoming cars. (Def. L.R. 56.1 ¶ 92.)

[4] Fields Statement of Facts ¶ 26, citing Exh. C, McDonald dep. at 143, states that "McDonald testified that Nancy Chafin told him that . . . Julie Keating had to be terminated." This fact is disputed by Chafin's own testimony that McDonald made the decision to fire Keating. Exh. E at 67-70. The court accepts plaintiff's version of the facts.

[5] According to Keating, however, she did not lie on this form because she mistook the form as requiring her to write down the deposit that she *would* receive when the car was actually built. (Keating Dep. at 125-26.) Although the facts are to be construed in a light favorable to the plaintiff, this is the reason that McDonald gave and is thus included as the "proffered reason" for the discharge.

5

Keating avers that although she was told that she was terminated for failing to comply with the company policy, the real reason McDonald terminated her was for rejecting his sexual advances. (Compl. ¶ 12; Pl. L.R. ¶ 54.) She reasons that, until she was terminated, McDonald never enforced the company policy and she was fired while no one else was disciplined. Keating concedes that McDonald discussed this policy at Saturday meetings with the salespeople but testifies that McDonald never warned her or any of the other salespeople that violating the company policy would result in discipline, including termination. (Pl. L.R. 56.1 ¶¶ 56; 67.) Moreover, McDonald knew Keating did not always comply with the company policy but never disciplined her until he fired her. (*Id.* ¶¶ 50-53.)

On or about April 12, 2000, Keating filed a charge of sex discrimination against Fields with the Equal Employment Opportunity Commission ("EEOC"). After receiving a right to sue letter from the EEOC, Keating timely filed her one-count complaint.

**DISCUSSION**

Section 703(a) of Title VII forbids an employer "(1) to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000(e)-2(a)(1). In order for Keating to make out a *prima facie* case of sex harassment, she must show that "(1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on [the individual's] sex; (3) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile or offensive working environment that affected seriously the psychological well-being of the employee; and (4) there is a basis for employer

6

liability.'" *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354-55 (7th Cir. 2002), quoting *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

Fields argues that Keating's claim fails at element (3) because there is no genuine issue of material fact that the environment was not hostile, either in Keating's mind or according to an objective standard; and at (4) because there is no basis for employer liability because Keating suffered no tangible employment action and therefore, she was required to avail herself of available corrective action, which she did not do.[6] Keating, of course, takes the opposite view. Her position is that the environment was hostile; that she was terminated because she did not cooperate with McDonald; and because McDonald was her supervisor, she was not required to resort to available corrective action.

## A. **Hostile Work Environment**

To be actionable under Title VII, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). The court must look at the totality of circumstances, including but not limited to the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Mosher v. Dollar Tree Stores*, 240 F.3d 662, 668 (7th Cir. 2001), citing *Faragher*, 524 U.S. at 787-88.

---

[6]Actually, Fields does not address the elements of proof as such. Rather, it argues that the facts are undisputed (a) that McDonald's conduct did not lead to a tangible employment action, (b) that Keating did not avail herself of available corrective measures as she must, and (c) that the environment was not hostile in the first place. Because the court finds it awkward to deal with the issues in this order, it takes the liberty of addressing them as stated above.

7

Fields, while denying that McDonald ever sexually harassed Keating, argues that even taking Keating's facts as true, Keating cannot establish that her work environment was subjectively and objectively hostile. With respect to the subjective prong, Fields relies on *Mosher*, 240 F.3d at 668, where the court affirmed the lower court's grant of summary judgment in favor of the defendant where the plaintiff could not show that her boss's pulling her onto his lap and fondling her breasts on her third day of work was subjectively hostile because "[a]t that time, she reported the incident to no one and within weeks was involved in what can only be reasonably described as a consensual sexual relationship with [her boss] which continued for many months." 240 F.3d at 668. *Mosher* is readily distinguishable because here, there is no evidence that Keating welcomed McDonald's advances and there is evidence that his comments continued over a period of months. Rather, Keating specifically let him know his comments were unwelcome by responding, "I can't believe you" in the deal bag incident and that his comments were "uncalled for" when he suggested that she sleep with a female customer. Although Keating seemed to differentiate between comments asking her for favors (harassing) from merely offensive sexual comments (not harassing), given Keating's strong negative reaction to all of the incidents, there is sufficient evidence from which a jury could infer that Keating believed that the work environment was sufficiently severe or pervasive as to alter the conditions of her employment.

With respect to whether Keating's work environment was objectively hostile, Fields relies on several cases where courts held the alleged harasser's conduct did not create a hostile environment. *See Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1144-46 (7th Cir. 1997) (holding no hostile work environment where the supervisor's sexual comments were directed at

8

others rather than the plaintiff, and the supervisor's telling the plaintiff that he spent a weekend at a nudist camp and, on a separate occasion with tears in his eyes, telling the plaintiff that he dreamt of holding her hands were not objectively so offensive as to be actionable); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995) (holding that no hostile work environment existed where the supervisor called the plaintiff a "pretty girl," made grunting sounds when she wore a leather skirt, told her that his office was not "hot" until she walked in, told her "all the pretty girls should run around naked" at work, and stated that all he had for company was his pillow when discussing his wife's absence from town and looking at his hand to imply masturbation); *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993) (holding no hostile work environment existed where the male co-employee attempted to kiss the plaintiff, asked her on dates, placed his hand on her shoulders several times, called her a dumb blonde and left a sign on her desk that stated "I love you"). Further, Fields points to the well established doctrine in this Circuit that there is "'safe harbor for employers in cases in which the alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her sex.'" *Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir. 1998), quoting *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1168 (7th Cir. 1996).

In response, Keating asserts that the facts in her case are not comparable to the cases Fields cites but are, rather, more akin to the facts alleged in *Faccio-Robert v. Empress River Casino*, 80 F. Supp. 2d 918, 920 (N.D. Ill. 2000), where the court denied the defendant's motion for summary judgment. The court in *Faccio-Robert* determined that the alleged harasser "crossed the line" when he made a "crude pick-up attempt" coupled with a threat to fire the

plaintiff unless she "put out," quizzed the plaintiff about her personal life, engaged her in conversations about sex or love, toasted on one occasion to "the Empress, to life, to women, to Hitler, to tits," and said "nice ass," big tits," or other sexually-charged comments on a weekly basis. *Id.* at 919-20. The court concluded that the supervisor's misconduct was "the kind of male attention that can make the workplace hellish for women." *Id.* at 920, citing *Baskerville*, 50 F.3d at 430. In an attempt to distinguish *Faccio-Roberts*, Fields points out that the court found the supervisor's crude pick-up attempt coupled with his threat to fire the plaintiff "extreme." 80 F. Supp. 2d at 920.

The court is to examine the totality of the circumstances in making its determination. No two cases are alike on the facts, so comparisons are difficult. Nevertheless, the deal bag incident is certainly comparable to a "crude pickup attempt," Keating was subjected to physical contact as McDonald directed her head to his "crotch" area, and McDonald made repeated sexual comments to her over the course of several months.[7] Although Fields characterizes the deal bag incident as merely "an isolated incident and not actionable[,]" relying on *Adusumilli*, 164 F.3d at 361,[8] the court disagrees in light of the aggressive nature of the conduct and the fact that

---

[7]Moreover, McDonald's comments that Keating sleep with the female customer and that he watch them and his propositions that Keating sleep with him or that he would get her a car if she "did something really good for him," are more severe than had McDonald called Keating a "pretty girl," told her that his office was not "hot" until she walked in or made other comments similar to those made in *Baskerville*. Keating also referred to comments in poor taste: McDonald's unsolicited statements to Keating that another married woman wanted to have an affair with him and that he would have to have an affair with her because Keating would not, that other women wanted to sleep with him and were in love with him, and that another saleswoman slept with another sales manager at Perillo BMW.

[8] In *Adusumilli*, the court affirmed summary judgment in favor of the defendant on the plaintiff's hostile work environment claim where the plaintiff complained of ambiguous comments about bananas, rubber bands and low neck tops, attempts to make eye contact and four isolated incidents in which a co-worker briefly touched the plaintiff's arms, fingers or buttocks. With respect to "the most serious misconduct, the unwanted touching of [the plaintiff's] buttocks," the court in *Adusumilli* stated that misconduct "took the relatively mild form of a poke and occurred only once. On the other hand, in *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807-09 (7th Cir. 2000), a hostile environment claim survived the defendant's motion for summary judgment where a co-worker made an

McDonald persisted in the comments thereafter. Again, no two situations are alike, but the court concludes that the disrespect directed at Keating would permit a reasonable jury to find that the environment was hostile from an objective viewpoint. Thus, we turn to the question whether there is a basis for employer liability.

**B.   Employer liability**

"The employer's liability [for sexual harassment of all kinds] is determined under agency principles, as the Supreme Court has enunciated them." *Molnar v. Booth*, 229 F.3d 593, 599-600 (7th Cir. 2000), citing *Burlington Industries v. Ellerth*, 524 U.S. 742, 760-65 (1998), and *Faragher*, 524 U.S. at 807-08. Generally, an employer bears vicarious liability for the harassment committed by a supervisor in accordance with the following rules as summarized in *Faragher*, 524 U.S. at 807-08:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. . . . No affirmative defense is available, however, when, the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

Fields argues that because McDonald did not threaten to fire Keating for refusing his sexual advances and Keating herself testified she did not know why she was fired, she cannot establish that she was fired for refusing McDonald, and therefore, she suffered no "tangible employment action"; rather, she was fired because she violated company policy. It is not entirely clear from Keating's memorandum whether she in effect has two counts, one for the hostile work

---

uninvited kiss and attempted a second one, attempted to remove the plaintiff's bra, and made lewd proposition for sex.

11

environment while at her former employer (whether or not she was justifiably fired) and the other for the termination, or whether her claim is simply that she was fired because McDonald took the policy violation as an opportunity to punish Keating for refusing his sexual advances. If the latter, the issue is simply that of causation, for being fired is obviously a tangible employment action.[9] Keating argues that the proof lies in the circumstantial evidence, including the proximity of the March 5 harassment incident and the March 23 discharge as well as the fact that no one else was disciplined in the precipitating incident.

The question is whether Keating has presented sufficient evidence to go to the jury on the issue of causation, *i.e.*, whether there is a link between the harassment and the discharge. The evidence read in a light favorable to the plaintiff demonstrates that there is a genuine issue of material fact as to causation. Keating had been a successful salesperson for several years but had within the past six months been the target of sexual advances from McDonald. After Chafin informed McDonald that Keating had violated company policy, McDonald made the decision to fire Keating. Other employees were not fired or otherwise disciplined for violation of the policy. Only if the facts are construed in a light favorable to the defendant is it possible to conclude that Keating did not suffer a tangible employment action, and this the court may not do on a motion for summary judgment.[10]

---

[9] A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761.

[10] Fields states that when its counsel asked Keating why she was fired, she testified that she had "no idea." (Def. Mem. at 4.) Fields vigorously argues that Keating's answer establishes that Keating was not fired because she refused McDonald's sexual advances. (*Id.*) Although Fields cites the page number in Keating's deposition in its brief (Keating Dep. at 194), it fails to include that page as an exhibit, ending at page number 187 of Keating's deposition instead. (Ex. D.) Moreover, Fields does not refer to that page as a citation to the record in its statement of facts. (Def. L.R. 56.2 ¶ 76.) The court, therefore, disregards this fact as unsupported by the record. *See* cases cited *supra* note 2. Moreover, even if Keating's response had been supported by the record, her answer is not an

Finally, to the extent Keating is claiming hostile environment at her former employer, *vel non*, she does not point to any tangible employment action that resulted from McDonald's behavior other than the discharge. Because of that, the *Ellerth/Faragher* defense is available to Fields. There is no genuine issue of material fact that Keating did not avail herself of the No Harassment Policy by "contact[ing] Barbara Becker at Jeep and arrang[ing] for a meeting to discuss [her] complaint. Therefore, Fields is entitled to judgment as a matter of law on its defense to such a claim.

## ORDER

For the reasons stated above, the court denies the motion for summary judgment [#8]. This case will proceed to trial on December 2, 2002.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: November 8, 2002

---

admission that McDonald did not terminate her for rejecting his sexual advances. Who made the decision to terminate Keating and why are not matters within Keating's personal knowledge; her knowledge or opinion is inadmissible to establish the employer's reason.